**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **v.** | § | **CR. No. C-05-250-1** |
| | § | **(C.A. No. C-09-275)** |
| **HENRY DELEON,** | § | |
| | § | |
| **Defendant/Movant.** | § | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is  Movant Henry DeLeon's (DeLeon) motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  D.E. 138. DeLeon also filed a motion seeking leave to file a brief in support of his § 2255 motion (D.E.  139), which this Court granted, and ordered the government to respond. D.E. 140. The government filed its Response and Motion to Dismiss, which includes a motion to expand the record to include the Affidavit of Kenneth Botary, DeLeon's trial counsel. D.E. 144, 145.  DeLeon filed a Reply and his Affidavit. D.E. 150, 151.

The government's motion to expand the record (D.E. 144) is GRANTED. DeLeon's motion to vacate (D.E. 138) is DENIED and he is DENIED a certificate of appealability.

## I.   FACTS AND PROCEEDINGS

### A.      Criminal Offense

Henry DeLeon was arrested in March 2005 during the attempted delivery of 2.22 kilograms of methamphetamine in Corpus Christi, Texas. D.E. 1. Angela Kabaz, a resident of Chandler, Arizona and a confidential informant for the Chandler police department, drove a spare tire

originally filled with methamphetamine to Corpus Christi at the request of  Ricardo Ochoa in

Arizona. When Ochoa asked Kabaz to perform this errand, Ochoa told her that she would be picking

up or delivering currency. D.E. 69 at  74. Kabaz knew Ochoa because he had horses. Kabaz is a

horse trainer and farrier who had done work for Ochoa. Ochoa was to pay her $2000 for the errand,

plus her expenses. Id. at 73.

Kabaz became suspicious that she would be carrying contraband of some kind after Ochoa

took her spare tire, and swapped it for a different spare, along with instructions that she was not to

try to use the spare tire, even if she had a flat. D.E. 69 at 82. Kabaz was to give the spare tire to

Ochoa's friend in Texas, who would then give her another spare tire. Id.

Kabaz contacted the Chandler police department and told them about Ochoa's request. The

Chandler police knew Ochoa as a suspected drug dealer and worked with Kabaz to coordinate her

trip and conduct surveillance on her. Among other things, they attached a GPS to her car so they

would know where she was. D.E. 68 at 142.  A listening device was placed in her purse.

Kabaz left Chandler one morning in late March 2005 after meeting with Ochoa. When she

was about 35 miles outside Chandler, she stopped at a Dairy Queen in Castle Grand. D.E. 68 at 115.

While she was there, the Chandler officers removed her spare tire from the rim and determined that

the tire contained 5 one gallon-sized plastic bags full of methamphetamine. Id. From Castle Grand,

Kabaz proceeded east on Interstate 10 to El Paso where she spent the night. Ochoa was in cell phone

contact with her during the trip. D.E. 69 at 84/87. In El Paso, Texas Department of Public Safety

officers took the lead from the Chandler police. Id.

DPS officer Ron Saenz purchased rock salt and gallon sized plastic bags to substitute for the

methamphetamine in Kabaz' spare tire. D.E. 68 at 216. He filled the bags with rock salt and

attempted to replicate the look of the original load, then switched the rock salt for the methamphetamine in the spare tire.

Kabaz was to meet with Ochoa's friend "Henry" in Texas. D.E. 69 at 87. Between leaving El Paso and arriving in San Antonio, Kabaz received 10-15 calls from Ochoa wanting to know what was taking her so long to get to Texas. D.E. 69 at 88. At the request of law enforcement, Kabaz claimed she got a speeding ticket after she left San Antonio, had gotten lost, and spent another night on the road. Id. at 90-91. Kabaz arranged to meet Henry the next day in Corpus Christi in the Wal-Mart parking lot in the 1800 block of South Padre Island Drive. Id. at 91.

Kabaz arrived at Wal-Mart, parked, and went inside. When she returned to her car, Henry, who was accompanied by another man and a woman, told her to follow him. Id. at 91. Henry took Kabaz to an automobile garage owned by the Gomez brothers in an industrial area off Gibson Lane. There was very little traffic in the area, other than delivery trucks for the courier service across the street. The inside of the garage was not visible from the street. Kabaz pulled into the driveway and Henry pulled in after her. Id. at 92.

Henry DeLeon attempted to get the spare tire off Kabaz' car, but was unsuccessful. The man with him, Manuel Perrales, took the spare tire off and rolled it into the garage. Id. at 93. Kabaz remained outside the garage talking to Henry. Henry told her that he did not have all the money together and he wanted her to stay another day or so. Kabaz called Ochoa to tell him what was happening. D.E. 69 at 93. While Kabaz was on the telephone with Ochoa, Henry came out of the garage and said, "It's nothing but shit. I'll put the tire on and you can go." D.E. 69 at 96. She described Henry as "mad, really mad." Id.

3

Shortly after DeLeon determined that the substance in the bags was rock salt, law enforcement moved in and arrested DeLeon, Martinez, Perrales, and took the Gomez brothers into custody for questioning. D.E. 68 at 223-24.

The government introduced phone records showing calls between DeLeon and Ochoa from February 20, 2005 through April 1, 2005, the day after DeLeon's arrest. D.E. 41-1, Exh. 14; D.E. 69 at 197-199. During that time period, there were 144 connected calls between Ochoa's and DeLeon's cell phones. D.E. 69 at 199.

DeLeon put on a defense. A long-time acquaintance of DeLeon's testified that DeLeon had sold a truck that had been modified for racing and DeLeon was expecting further payment for the truck. The buyer put $5000 down and DeLeon signed the title to him, but withheld the racing engine. D.E. 69 at 285-94. Mike Nelson knew DeLeon because they both own race cars.

The manager of a local Days Inn testified that Cindy Ochoa Olivares stayed at the Days Inn in March 2005.

Jose Gomez, the owner of Gibson Lane Automotive, testified that he was friends with DeLeon and had done work on DeLeon's race cars. D.E. 69 at 256. The day of DeLeon's arrest, DeLeon called and asked to use the tire machine at the garage. Id. at 272. He showed Henry the machine and went back to the vehicle he had been working on. Gomez did not know anything about drugs. Id.

Liza Escamilla testified that she worked for Henry DeLeon at his tile business and was engaged to him. D.E. 69 at 309. At the time of trial she was seven months pregnant with his child. Id. at 317. During their relationship, she moved out for several months because DeLeon was having an affair with a woman in Arizona, Cindy. Id. at 312-13. Cindy called DeLeon constantly in February and March 2005. Cindy also brought money from Arizona to make payments on the racing

4

truck someone else bought. Escamilla was present for two of the three payments for the truck. Id. at 314. She counted the $5000 cash paid down on the truck at the time of the original deal. Id. She also testified that Manuel Perrales had worked for Henry in the tile business for seven years. Id. at 321.

**B.      Criminal Proceedings**

DeLeon was arrested March 31, 2005, along with Manuel Perrales and Carolina Martinez-Torres at the garage. D.E. 1. DeLeon was later indicted along with the others and Crus Ochoa-Olivares (a.k.a. Ricardo Ochoa and Tim Ochoa). D.E. 16.

DeLeon hired Kenneth Botary, a Corpus Christi attorney, to represent him in this matter. Trial began in July 2005 and lasted three days. At the conclusion of the trial, DeLeon was found guilty on both counts of the indictment. Perrales was acquitted. D.E. 63. The indictment against Martinez-Torres was dismissed before trial. D.E. 50, 51. The Court ordered a Presentence Investigation Report (PSR) on DeLeon and sentencing was scheduled, but then postponed.

Before sentencing, DeLeon hired new counsel. D.E. 74. DeLeon filed a motion for hearing to consider possible jury misconduct in January 2006. D.E. 80. The Court held a hearing in February 2006 on the issue and continued the hearing in June 2006, at which time the Court denied relief finding no misconduct. D.E. 124 at 17.

DeLeon's counsel filed objections to the PSR. D.E. 87. Sentencing was scheduled for September 2006. DeLeon substituted a third Corpus Christi attorney before sentencing. D.E. 90, 92. Sentencing was postponed two more times.

In November 2006, DeLeon's new counsel filed a motion for new trial claiming that his trial attorney was ineffective in several respects. This Court held a hearing in December 2006 and denied the motion for new trial. D.E. 125-1 at 2. Sentencing was held at the conclusion of the hearing on

the motion for new trial. The Court overruled the objections to the PSR which contested several of the factual statements regarding his offense. D.E. 126 at 8-10.

The PSR calculated DeLeon's offense level as 38 based upon the quantity of methamphetamine. D.E. 76. DeLeon admitted to two previous drug trafficking convictions resulting in application of criminal history Category VI. The maximum term of imprisonment and the Guideline calculation were life imprisonment. D.E. 126 at 10. DeLeon was sentenced to life imprisonment. D.E. 106, 126 at 10. At sentencing, DeLeon stated that "I wish I would have gotten another chance. I don't think I had a fair trial. . . ." D.E. 126 at 10.

DeLeon appealed to the Fifth Circuit. D.E. 105. On appeal, DeLeon asserted a single issue, that the trial court's replacement of Juror 12 with an alternate after the close of evidence was error. D.E. 134. The Fifth Circuit held that it was not error and affirmed DeLeon's conviction. Id.

DeLeon filed a petition for writ of certiorari which was denied in October 2008. D.E. DeLeon then timely filed his § 2255 motion in October 2009. D.E. 138.

## II. MOVANT'S ALLEGATIONS

DeLeon raises six grounds in his § 2255 motion. DeLeon asserts a number of claims of ineffective assistance of counsel. First, counsel failed to object when Manuel Perrales' post-arrest statement was placed before the jury by a law enforcement officer where the statement was not cumulative, was admitted in violation of Bruton and in violation of DeLeon's Sixth Amendment right to confront witnesses against him. D.E. 138 at p. 5.

Second, trial counsel failed to seek a severance of his trial and that of co-defendant Manuel Perrales. Id. at p. 6. He contends that their defenses were antagonistic and inconsistent requiring severance. Id.

Third, trial counsel failed to move for acquittal on Count Two of the indictment on the grounds that DeLeon was never in possession of actual narcotics. Id. at p. 7.

DeLeon claims that trial and appellate counsel were ineffective because they failed to adequately challenge the Court's handling of the dismissal of Juror # 12, including their failure to ensure that DeLeon's due process rights to be present were not violated. Id. at p. 9.

Fifth,  DeLeon alleges that trial counsel failed to adequately prepare for trial, failed to investigate, and failed to secure the presence of a defense theory witness. Id. at  p. 16.

Finally, DeLeon contends that trial and appellate counsel failed to vindicate DeLeon's right to effectively cross-examine witnesses and to be present at all critical stages of the proceedings. Id. at 18. Specifically, DeLeon claims that he should have been present for the hearing, outside the presence of the jury, into the possible relevance of Angela Kabaz' informant activities in other cases. DeLeon also contends that the closing of the courtroom during that portion of the proceedings violated his right to a public trial. D.E. 138 at 18.

### III.   ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United

States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

## B.   Standard for Ineffectiveness of Counsel

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to some increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).[1]

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." United States v. Williamson, 183 F.3d 458, 462 (5th Cir.

---

[1]   The Fifth Circuit adopted the "any amount of jail time" test in United States v. Grammas, 376 F.3d 433, 439 (5th Cir. 2004). "This test originated from the Supreme Court's decision in Glover v. United States where the Court explained that any amount of additional jail time has significance under Strickland.." Id. (internal citations omitted).

1999) (citing <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985)); <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir.1998)). Counsel's appellate performance is also judged under the <u>Strickland</u> standard. 466 U.S. 668. "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" <u>United States v. Reinhart</u>, 357 F.3d 521, 530 (5th Cir. 2004) (quoting <u>United States v. Phillips</u>, 210 F.3d 345, 350 (5th Cir. 2000)).

**C.     Alleged Ineffective Assistance for Failing to Object to Admission of Co-defendant's Out-of-Court Statement**

Neither Henry DeLeon or Manuel Perrales testified during trial. During trial, Brian Villela with the Drug Enforcement Administration, testified about his interview with Perrales after he was arrested. Villela asked Perrales why Henry was angry after the tire was opened, and Perrales replied that Henry thought it was ice but it was salt. When Villela questioned him further, Perrales denied that he said "ice." Villela testified that "ice" is slang for methamphetamine that is relatively pure and uncut. D.E. 69 at 196. The methamphetamine seized in this case was 80% pure according to the DPS chemist. D.E. 68 at 205. DeLeon claims that his trial counsel was ineffective for failing to object to the admission of the statement, relying on <u>Bruton v. United States</u>, 391 U.S. 123 (1968). He further asserts that counsel should have anticipated the government's efforts to use this statement and attempted to exclude it before the jury heard it. D.E. 141 at 12-13. DeLeon alleges that the statement was outcome determinative. <u>Id</u>. at 13.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to confront his accusers which includes the right to cross-examine witnesses. <u>See</u> U.S. Const. Amend. VI; <u>Bruton</u>, 391 U.S. at 126; <u>Pointer v. Texas</u>, 380 U.S. 400, 404, 406-407 (1965).

In <u>Bruton</u>, the Court held it was reversible error to allow the confession of one codefendant that implicated himself and his codefendant to be read to the jury when the defendant who made the statement did not testify. <u>Id.</u> at 128; <u>see also</u> <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) (expanding rights under confrontation clause).

The government cites several cases in support of its claim that there was no Confrontation Clause violation. <u>Richardson v. Marsh</u>, 481 U.S. 200, 208-09 (1987); <u>United States v. Harper</u>, 527 F.3d 396, 406-07 (5th Cir. 2008); <u>United States v. Ramos-Cardenas</u>, 524 F.3d 600, 607-10 (5th Cir. (2008). These cases are readily distinguishable on their facts. Those cases involve the use of the redacted confessions by codefendants at trial along with instructions to the jury to use those confessions only against the person who made the statement. Here, there was no such instruction and such an instruction would have been nonsensical.

Although a Confrontation Clause violation may occur during trial, such error is not automatic cause for reversal, even on direct appeal. Such an error can be harmless when in light of all the other evidence, the omission of the statement would not have changed the outcome. <u>See</u> <u>United States v. Huynh</u>, 2011 WL 989825 at * 9 (5th Cir. Mar. 22, 2011) (designated unpublished) (admission of coconspirator's statement about source of illegal funds in money laundering conspiracy through government agent harmless); <u>see also</u>, <u>United States v. Ramirez</u>, 388 Fed. Appx. 807, 2010 WL 2881527 at *811 (10th Cir., July 22, 2010) (designated unpublished) (holding confidential informant's description of defendant's involvement in drug conspiracy testified to by government agents harmless because it was cumulative of other proper testimony).

Under the applicable <u>Strickland</u> test, the issues are whether counsel's failure to object or otherwise attempt to exclude the statement fell below an objective standard of reasonable professional assistance and whether counsel's failure prejudiced DeLeon. Without having to decide

the first prong of the <u>Strickland</u> test,[2] it is clear that counsel's failure to object or file a motion in limine was not harmful. <u>See</u> <u>Armstead</u>, 37 F.3d at 210 ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); <u>Carter</u>, 131 F.3d at 463 ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Perrales' statement to Villela was not the only source of the evidence that DeLeon was mad or unhappy when he discovered that the content of the bags inside the tire was salt instead of methamphetamine. Two other witnesses testified along those lines. Kabaz testified that initially Henry DeLeon wanted her to stay a few days because he did not have all the money together, but then after Henry discovered the bags were full of rock salt, he told her "It's nothing but shit. I'll put the tire on and you can go." D.E. 69 at 96. Kabaz described DeLeon as "mad, really mad." <u>Id</u>. This testimony was more powerful than the reported statement by Perrales, especially because Perrales immediately denied that he used the word "ice." The agent testified as to Perrales' statement and then to his immediate retraction. D.E. 69 at 196.

Antonio Gomez also testified that DeLeon was not unhappy when the tire was opened, but became unhappy when he found out the bags in the tire contained salt. D.E. 68 at 284. If DeLeon was expecting money, but received drugs, he likely would be upset, but not because he tasted the

---

[2]    The government has filed the Affidavit of trial counsel. D.E. 145-1. Counsel states that he did not object as a matter of trial strategy on several grounds, "An objection from DeLeon [sic] would have drawn special attention of the remark from the jury, and possibly place more weight on the evidence." <u>Id</u>. at Response No. 1. "Moreover, if I had objected to the statement, it was my opinion that the trial judge would have overruled my objection and allowed the jury to hear the statement. The jury would also have heard my arguments to exclude the statement as well as the government's argument to include the statement. The arguments would have further prejudiced DeLeon because it would have been perceived that he wanted to exclude inculpating evidence." <u>Id</u>. at 2. "I also believed that had I objected to Perrales' statement, it would have overshadowed DeLeon's defense." <u>Id</u>. Botary also thought that the statement was admissible as Perrales' present sense impression on the grounds that Perrales' defense was that he had no knowledge of the contents of the tire before it was opened. <u>Id</u>.

11

product and discovered it was rock salt instead of methamphetamine. Under these circumstances, DeLeon cannot demonstrate actual prejudice as required for relief on this ground.

**D.      Alleged Ineffective Assistance for Failing to Seek Severance**

The trial of DeLeon and Perrales was joint. DeLeon contends that counsel's failure to seek a severance of the trials violated DeLeon's Sixth Amendment right to effective counsel.

When two or more defendants are charged with committing a crime together, it is the rule, not the exception, that persons indicted together should be tried together. Fed. R. Crim. P. 8(b); [3] United States v. Thomas, 627 F.3d 146, 156 (5th Cir. 2010); United States v. Rocha, 916 F.2d 219, 227-28 (5th Cir. 1990). The indictment included both Perrales and DeLeon. D.E. 16. Because the indictment alleged that each of the defendants participated in the same conspiracy, the requirements of Rule 8 were satisfied and joinder was proper. Joint trials are especially important in conspiracy cases. United States v. Pofahl, 990 F.3d 1456, 1483 (5th Cir. 1993) (affirming denial of motion for severance in drug conspiracy case).

When joinder is proper, severance may be obtained when the joinder appears to prejudice a defendant. Fed. R. Crim. P. 14(a). The moving party must demonstrate significant prejudice to overcome the judicial economy and expense of separate trials. See Thomas, 627 F.3d  at 156. That burden is heavy when seeking to demonstrate that antagonistic defenses warrant the granting of a severance motion.  In this case, both defendants claimed that they were innocent of the conspiracy and aiding and abetting charges. DeLeon claimed he was expecting money in payment for the sale of his racing truck. Perrales claimed that he was present because his employer, DeLeon, asked him to be there and he had no knowledge of drugs. The defenses were not antagonistic.

---

[3]    In pertinent part, Federal Rule of Criminal Procedure 8(b) provides,"The indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts, or transactions, constituting an offense or offenses."

Under the circumstances, DeLeon cannot meet the burden to show that he was prejudiced–to do so he must show that this Court likely would have granted the motion, a burden he has not met.

**E.      Alleged Ineffectiveness For Failing to Move For Acquittal on Count Two**

DeLeon claims that defense counsel should have moved for a judgment of acquittal on Count Two on the grounds that he did not aid and abet possession with intent to deliver an actual illegal drug. D.E. 138 at Ground Three.

Defense counsel for DeLeon moved for a judgment of acquittal on Count One both at the conclusion of the government's case and at the close of the evidence. His motion was denied. D.E. 69 at 239-40, 334-35. Perrales' counsel moved for acquittal on both counts at the conclusion of the government's case and at the close of the evidence. His motions were also denied. Id. at 240, 334.

Notably, DeLeon did not challenge the sufficiency of the evidence to support his conviction on appeal. See D.E. 134 (Opinion of Fifth Circuit Court of Appeals). Because the evidence is sufficient to support DeLeon's conviction, this ground fails. See United States v. Garcia, 77 F.3d 857, 859 (1996) (counsel's failure to move for acquittal did not prejudice defendant when the evidence is sufficient to support the conviction).

**F.      Alleged Ineffective Assistance of Trial and Appellate counsel regarding Juror 12**

Trial counsel objected to the exclusion of Juror 12 and appellate counsel raised that issue at the Fifth Circuit. The Fifth Circuit found no error and affirmed the judgment. The issue of Juror 12 may not be relitigated in DeLeon's § 2255 motion. Where a claim was raised on direct appeal and rejected by the appellate court, it is procedurally barred from subsequent collateral review. United States v. Rocha, 109 F.3d 225, 229-30 (5th Cir. 1997); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994). Indeed, it has long been "settled in this Circuit that issues raised and disposed of in

13

a previous appeal from an original conviction are not considered in § 2255 Motions." <u>United States</u> <u>v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986) (affirming district court's refusal to entertain the defendant's § 2255 motion).

DeLeon contends that trial counsel was ineffective for failing to object to the trial court's questioning of the juror privately. DeLeon claims that the Court's *in camera* questioning deprived him of his right to be present at all critical stages of the proceedings which violated his Due Process rights and that trial and appellate counsel were ineffective for failing to object and bring this issue before the Fifth Circuit. D.E. 138 at Ground Four. Because this issue is related to ground Six, these issues will be dealt with together in subsection IV(H), *supra*.

## G.  Alleged Ineffectiveness of Counsel by Failing to Adequately Prepare for Trial, Failing to Investigate, and Failing to Secure the presence of a Defense Theory Witness

DeLeon contends that trial counsel was ineffective at trial because he did not interview or secure the presence of Paz Gomez "who was a direct eyewitness to [DeLeon's] interaction with Angela Kabaz when it was discovered that the informant was not delivering money." DeLeon claims that Paz Gomez would have testified that DeLeon did not react angrily to the discovery of the rock salt which would have caused a different result in the proceedings. D.E. 138 at Ground Five. DeLeon also contends that trial counsel was ineffective for failing to attempt to exclude Perrales' testimony about DeLeon expecting "ice." DeLeon's third complaint is that counsel failed to interview Carolina Martinez, the woman with DeLeon who allegedly tasted the substance in the bags and determined it was salt, not methamphetamine. As part of this complaint, DeLeon contends that Carolina Martinez' statement to law enforcement was used against him at trial. Each of these subissues will be discussed separately.

1.     *Paz Gomez*

During the trial, there was mention of a potential eye witness, Paz Gomez, to the delivery of the spare tire by Kabaz to DeLeon, Perrales, and Martinez-Torres. Several people noted his presence around the time that Kabaz went to the Gomez' auto repair facility and described him as seated in a lawn chair in the shade nearby. D.E. 68 at 254.[4]

Brian Villela with the DEA interviewed Paz Gomez. He did not take a written statement from Paz Gomez, did not try to find him for trial, and did not know his address. D.E. 69 at 215-16.

Joe Gomez, one of Paz Gomez' brothers and the owner of the auto repair shop testified that Paz Gomez is disabled, but he hangs around the shop sometimes. D.E. 69 at 274. He had not been able to talk to Paz since DeLeon's arrest. Id. at 278.

DeLeon claims that Paz Gomez' testimony would have assisted him, even though DeLeon admitted during the motion for new trial hearing, that he had not spoken to Paz Gomez. D.E. 125 at 13. During the motion for new trial hearing, Brian Villela testified that Paz Gomez was sitting by a building next door to the garage, in the shade and three or four other cars were between Gomez and Kabaz' car. D.E. 125 at 24-25. Villela believed that the vehicles would likely have obstructed Paz Gomez' view of Kabaz and DeLeon. Id. Villela testified that he spoke to Paz Gomez after the arrests and Gomez had nothing of value to offer, did not see or hear anything regarding the events of the afternoon. Id. at 26. Villela also recalled that Paz Gomez told him that when DeLeon arrived, Gomez went and sat in the shade because he did not want to be part of anything that was going on. Id. at 27. Villela did not recall taking a statement from Gomez, but he made notes that would have

---

[4]    The record is not clear on Paz Gomez' precise location. Antonio Gomez was looking at Government's Exhibit 5, and described the location as "He was sitting by this building that you see on the side. He was sitting there in a lawn chair or folding chair. There was–The shade was there by the time." Id. at 354-55.  "[M]y other brother is the one who was sitting outside who I was talking to, you know, he was sitting out there by the building. . . .Well, with the cars around he stays hidden." Id. at 259-60. Antonio Gomez did not know the address for his brother Paz, just that he lived near Pierce and Vanderbilt Streets in Corpus Christi. Id. at 273.

gone into his report. DPS may have taken a statement, but Villela did not recall whether one was taken or not. Id. Villela admitted that immediately preceding the arrests, he could not see Gomez from Villela's location around the corner, but when he converged on the garage, Gomez was seated on the ground next to his lawn chair next door. Id. at 28. During the same hearing, Villela testified it was possible that Gomez saw or heard something if he moved his chair or went inside the workshop and Villela did not know whether Paz had done so. Id. at 30-31.

According to the Affidavit of defense counsel,  the discovery produced by the government indicated that Gomez denied seeing anything.[5] D.E. 145-1.

DeLeon has produced no evidence, such as an affidavit from Paz Gomez to support his claim that Gomez would have testified favorably to him. In general, "complaints of uncalled witnesses are not favored . . . ." in post-conviction proceedings. Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 1997). "[W]hen 'the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views the claims of ineffective assistance with great caution.'" Id. (quoting Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001)). A defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify is usually fatal to an ineffective assistance of counsel claim. Id.; see also Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir.1985).

In the Harrison case, the Fifth Circuit remanded for development of the record where defense counsel failed to interview a witness whose name and address, as well as the substance of his

---

[5]   Defense counsel's affidavit (D.E. 145-1) states that the discovery provided by the government, including notes from an interview with Paz Gomez, reveal that Paz Gomez told law enforcement that he did not see anything. D.E. 145-1 at 6. Counsel states that he made four different efforts to find Paz Gomez, including receiving assurances from Joe and Antonio Gomez that Paz Gomez would appear at trial. The Gomez brothers told counsel that Paz did not have a permanent address, but stayed with various relatives, moving every few days. Counsel was also told that Paz Gomez did not like DeLeon and would testify unfavorably if he were made to come to trial. Id.

testimony was provided to defense counsel. The difference here is that DeLeon only speculates that Paz Gomez was in a position to see part of the interaction between DeLeon and Kabaz. DeLeon further claims Gomez actually saw or heard the interaction and would have testified favorably for DeLeon. Although it is possible that Paz Gomez saw something, it is pure speculation to assume that his testimony would have made any difference in the outcome. For that reason, this Court FINDS that DeLeon has not met his burden to show prejudice from the failure to secure Paz DeLeon's presence at trial.

2. *Failure to exclude out-of-court statement of Perrales that DeLeon was expecting ice*

DeLeon contends that defense counsel should have anticipated that the government would seek to present Perrales' out of court statement, that counsel should have attempted to exclude it, and that counsel's failure would have resulted in a different outcome of these proceedings. D.E. 138 at 17. This issue was disposed of in subsection IV(c), *supra*.

3. *Failure to call Carolina Martinez*

Carolina Martinez was the woman with DeLeon in the vehicle that met Kabaz at Wal-Mart. Martinez was charged in this conspiracy on both counts (D.E. 16), but the charges against her were dismissed on July 8, 2005 (D.E. 51), before the trial of the co-defendants began approximately a week later. See D.E. 68. DeLeon claims that Martinez would have testified that she tasted the white substance on her own volition, not because DeLeon asked her to do so. He further claims that her statement to law enforcement was used against DeLeon at trial in violation of his Confrontation Clause rights. DeLeon claims that counsel did not, but should have interviewed Martinez.

On the alleged Confrontation Clause violation which DeLeon claims shows counsel's flawed trial strategy and lack of preparation, DeLeon is wrong. The statement that the substance in the bags

was salt did not come in through law enforcement, but was testified to by Antonio Gomez. Gomez could not identify the speaker who was in the garage. D.E. 68 at 261. Antonio Gomez heard the statement, testified to DeLeon's reaction and was available at trial to be cross-examined. There was no Confrontation Clause violation.

DeLeon's claim that Martinez would have testified that she tasted the rock salt on her own, would not have changed the outcome. Id. "[C]omplaints of uncalled witnesses are not favored . . . ." in post-conviction proceedings. Harrison, 496 F.3d at 428. "[W]hen 'the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views the claims of ineffective assistance with great caution.'" Id. (quoting Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001)). A defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify is generally fatal to an ineffective assistance of counsel claim. Id.; see also Alexander, 775 F.2d at 602. For these reasons, DeLeon's claim on this ground also fails.

**H.     Claims That Trial and Appellate Counsel Were Ineffective for Failing to Vindicate DeLeon's Due Process Right to Be Present, and His Right to an Open and Public Trial**

In Ground Six, DeLeon claims both trial and appellate counsel failed to object and then to raise on appeal that he was excluded from parts of the proceedings. He claims that his right to cross-examine Angela Kabaz was infringed when the trial court removed him from the courtroom during its determination of the relevance of Kabaz' participation in other cooperating activities with the Chandler police. He makes the same complaint as part of Ground Four, that the trial court

questioned Juror 12 outside the presence of counsel and outside his presence. Defense counsel did

not object either time and these issues were not raised on appeal.

1. *Criminal defendant's right to be present*

A criminal defendant has the right to be present at his own trial for two basic reasons. First,

the right is constitutionally protected. The Confrontation Clause of the Sixth Amendment to the

United States Constitution requires the defendant's presence when testimony is presented against

him. Illinois v. Allen, 397 U.S. 337, 338 (1970). Also, as the Supreme Court has stated, the right to

be present is "protected by the Due Process Clause in some situations where the defendant is not

actually confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526

(1985). Moreover, a criminal defendant "has a [constitutional] right to be present at all stages of the

trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422

U.S. 806, 819 n.15 (1975).

2. *DeLeon's exclusion from the conversation between the trial court and Juror 12 did not violate DeLeon's Due process rights*

A criminal defendant's Constituional rights are not infringed when he and/or counsel are

excluded from interactions between the trial judge and a juror. Gagnon, 470 U.S. at 526. In that case,

the defendant challenged an *ex parte* conversation between the trial court and a juror on appeal, as

DeLeon does in this § 2255 motion. The Gagnon Court rejected his claim that his due process rights

were violated,

> We think it clear that respondents' rights under the Fifth Amendment Due Process
> Clause were not violated by the in camera discussion with the juror. '[T]he mere
> occurrence of an ex parte conversation between a trial judge and a juror does not
> constitute a deprivation of any constitutional right. The defense has no constitutional
> right to be present at every interaction between a judge and a juror, nor is there a
> constitutional right to have a court reporter transcribe every such communication.'

Id. (quoting Rushen v. Spain, 464 U.S. 114, 125-126 (1983)). "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 108 (1934). In determining whether a violation of due process has occurred, a reviewing court should consider the entire record.

Here, although the initial conversation between Juror 12 was held privately between the juror and the Court, this Court advised the parties and counsel of the issue. Further questioning of Juror 12 occurred with counsel and DeLeon present. D.E. 69 at 335/49. Counsel for all parties were allowed to examine the juror and after Juror 12 was excused for the evening, defense counsel put DeLeon on the witness stand for the limited purpose of rebutting some of Juror 12's testimony. After hearing argument from counsel, this Court excused the juror. As in Gagnon, the original encounter between the judge and the juror "was a short interlude in a complex trial; the conference was not the sort of event which every defendant had a right personally to attend under the Fifth Amendment." Gagnon, 470 U.S. at 527. Under these circumstances, defense counsel had no basis to object to this Court's initial questioning of Juror 12 in camera without counsel or the parties during the trial and no basis to complain of exclusion on appeal. DeLeon cannot demonstrate any prejudice from his exclusion from initial questioning.

   3.  *DeLeon's absence from the relevance hearing on Kabaz' other cooperation with law enforcement did not violate his due process rights or his right to a public trial*

During her direct examination in open court, Kabaz acknowledged that she had previously cooperated with Chandler police on a prior occasion and had been paid $100 for her assistance. D.E. 69 at 72-73. She also testified that in this case, Ochoa offered her $2000-3000 to deliver the tire for him in this case. Id. at 74. During the testimony of law enforcement, defense counsel determined that Kabaz was paid $2000 plus her expenses by DPS for her assistance in this case (D.E. 69 at 33-34)

and that the Chandler police department paid her $1500. Id. at 69. There was also a possibility that she would be paid more after the trial. Id. at 68; 98.

During cross-examination by Perrales' counsel, Kabaz testified that she was involved in another cooperation with the Chandler police department. The Court held a hearing outside the presence of the jury to determine the relevance of further testimony on that issue. D.E. 135-36, 146-49. The Court determined that the other investigation was ongoing. Before closing the courtroom, the Court voiced its concern for the safety of those involved and its concern about interfering in an active investigation. Id. at 148-49. At that time, Kabaz expressed concern over the presence of the defendants. D.E. 150. The Court excused the defendants, but counsel remained and the court reporter took a verbatim transcript of the proceedings. D.E. 152.

The hearing held by the trial court is expressly authorized as a preliminary hearing to determine the admissibility of evidence. Fed. R. Evid. 104(a). The Federal Rules of Criminal Procedure authorize the absence of a defendant during a conference or hearing for determination of an issue of law. Fed. R. Crim. P. 44(b)(3).

After examination of Kabaz by the Court and counsel for the parties, the parties reached a stipulation of Kabaz' testimony on the pending criminal case in which Kabaz was assisting the government. D.E. 56. The stipulation was filed at the end of the same day Kabaz testified and was offered into evidence by counsel for defendant Perrales in his case in chief. D.E. 69 at 246-49.

Before the stipulation, defense counsel for DeLeon aggressively cross-examined Kabaz about the money she was receiving from the two law enforcement entities and her expectation of receiving future payment after trial. D.E. 99-101. He cross-examined Kabaz about her telephone conversation with DeLeon's fiancee; about her relationship with Ochoa, inconsistencies in her story about delivering or picking up money, and the events the day of delivery. D.E. 99-130.

21

A defendant has a Sixth Amendment right to confront the witnesses against him. United States v. McCullough, 631 F.3d 783, 790 (5th Cir. 2011). This right includes the opportunity for the examiner to impeach or discredit the witness. Id. Confrontation Clause rights are satisfied when defense counsel is permitted to expose to the jury facts from which the jurors could appropriately draw inferences relating to the reliability of the witness. Id. (quoting Davis v. Alaska, 415 U.S. 308, 315 (1974)); see also United States v. Willis, 631 F.3d 740, 750 (5th Cir. 2011). In this case, Kabaz' potential financial motivation to testify was exhaustively explored and her previous work with law enforcement, even if not the details, was before the jury. DeLeon does not explain how the jury's view of Kabaz would have been different had she testified more fully before the jury or if he had been in the courtroom during the Court's determination of the relevance of the additional details of her other cooperation. DeLeon can show no prejudice from counsel's alleged failure. This portion of his complaint is without merit.

A criminal defendant also has a right to a public trial, but that right is not absolute and portions of a criminal trial may be closed without violating a defendant's constitutional rights. Waller v. Georgia, 467 U.S. 39 (1984). In Waller, the Court held that the party seeking to close a hearing "must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceedings, and it must make findings adequate to support the closure. Id.; United States v. Hitt, 473 F.3d 146, 154 & n.7 (5th Cir. 2006). Previously in United States v. Osborne, 68 F.3d 94, 99 (5th Cir. 1995), the Osborne court held that partial closures of a courtroom are not subject to the same level of scrutiny as a full closure and do not deny a defendant the right to a public trial. See also United States v. Brown, 447 F. Supp.2d 666, 670 (W.D. Tex. 2006) (closure

of hearing on a bill of exception to protect ongoing law enforcement investigation and safety of persons cooperating with that investigation).

In <u>Hitt</u>, the district court closed the courtroom during a pre-trial suppression hearing. The closing was on the government's motion to protect the minor victim of the crime. The Fifth Circuit held that the closing of the courtroom during the pretrial motion hearing was narrowly tailored to protect the government's compelling interest in the privacy and psychological well-being of the minor victim. <u>Id</u>.

This Court closed the courtroom briefly to consider whether further testimony of Kabaz on her activities, unrelated to the charges against these defendants was relevant. The questioning involved an ongoing investigation by Arizona law enforcement. The Court closed the courtroom to safeguard the witness and also the integrity of the ongoing investigation. The situation before this Court was similar to the facts considered appropriate for closure within this Circuit. Counsel was not ineffective for failing to object. The closing was brief, the witness had been extensively cross-examined, the jury heard her testimony that she was presently engaged in similar work with Arizona law enforcement. Moreover, DeLeon does not claim any prejudice from his counsel's actions. In the absence of prejudice, DeLeon is not entitled to relief. <u>Carter</u>, 131 F.3d at 463("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## IV.   CERTIFICATE OF APPEALABILILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although DeLeon has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a

petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

The Court concludes that reasonable jurists could not debate the denial of DeLeon's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that DeLeon cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find this Court's procedural rulings debatable. Accordingly, DeLeon is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the foregoing reasons, DeLeon's § 2255 motion (D.E.138) is **DENIED** and he is

**DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 23rd day of June, 2011.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE